# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GUSTAVO GARCIA | * | |
| Presa Falcon 149, Torre Oslo, PH-3 | * | |
| Ampliacion Granada | * | |
| Mexico City, 11529 | * | |
| Mexico, | * | |
| | * | |
| and | * | |
| | * | |
| ALL SIMILARLY SITUATED PARTIES, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| MICHAEL POMPEO | * | |
| United States Secretary of State | * | |
| 2201 C Street, NW | * | Civil Action No. 1:18-cv-01822 |
| Washington, DC  20520, | * | |
| | * | |
| and | * | |
| | * | |
| JEFFERSON SESSIONS III | * | |
| United States Attorney General | * | |
| 950 Pennsylvania Avenue, NW | * | |
| Washington, DC  20530, | * | |
| | * | |
| and | * | |
| | * | |
| DEPARTMENT OF STATE | * | |
| 2201 C Street, NW | * | |
| Washington, DC  20520, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT – CLASS ACTION

Plaintiffs Gustavo Garcia, and where appropriate all other similarly situated individuals,

bring this action against Defendants Michael Pompeo, in his capacity as United States Secretary

of State, Jefferson Sessions III, in his capacity as United States Attorney General, and

Department of State pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, the

Privacy Act, 5 U.S.C. § 552a, *et seq.*, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201,

the All Writs Act, 28 U.S.C. § 1651, and the First and Fifth Amendments to the United States

Constitution.

### JURISDICTION

1.      This Court has both subject matter jurisdiction over this action and personal

jurisdiction over Defendants pursuant to 28 U.S.C. § 1331.

### VENUE

2.      Venue is appropriate under 28 U.S.C. § 1391.

### PARTIES

3.      Plaintiff Gustavo Garcia, a/k/a Gustavo Garcia Arias ("Garcia") is a dual citizen

of the United States and Mexico and is a resident of Mexico City, Mexico.

4.      Similarly situated individuals include anyone who: (a) is a citizen of the United

States; (b) was conditionally hired to work in a United States Embassy since 2010 as an

Ordinarily Resident employee; (c) was processed by an Embassy Regional Security Office

("RSO") for a security certification; (d) was denied a security certification; (e) was not provided

an opportunity to appeal the security certification denial; and (f) had the conditional offer of

employment rescinded as a result of the security certification denial.

5.      Similarly situated individuals also include anyone: (a) who is a citizen of the

United States; (b) who was processed by an RSO for a security certification; (c) about whom an

RSO currently maintains records describing how that individual exercises rights guaranteed by

2

the First Amendment; and (d) whose records about First Amendment-protected activities were

collected and maintained solely as a result of the security certification process.

6.      Similarly situated individuals also include anyone: (a) who is a citizen of the

United States; and (b) whose security records are either: (i) allowed to be accessed by Foreign

Service National Investigators working for an RSO; or (ii) maintained in a location where they

can be freely accessed by Foreign Service National Investigators.

7.      Defendant Department of State ("State") is an agency within the meaning of 5

U.S.C. § 552(e), and is an agency responsible for conduct which is the subject of this action.

8.      Defendant Michael Pompeo is the United States Secretary of State and, as such,

has legal authority over State.

9.      Defendant Jefferson Sessions III is the United States Attorney General and, as

such, has legal authority over the Department of Justice ("DOJ").

## CLASS ACTION ALLEGATIONS

10.     Counts 1, 3, 4, 6, and 7 of this action are brought by Garcia on behalf of the three

above described classes of all others similarly situated under the provisions of Fed. R. Civ. P.

23(a) and (b)(1)-(2).

11.     The classes so represented by Garcia in this action, and of which he is a member,

consist of three distinct but overlapping groups of people.

12.     The first class is comprised of U.S. citizens who have had their conditional offers

of employment unlawfully rescinded for failure to obtain a security certification despite the fact

that the security certification process is reserved for use on non-U.S. citizens, which constitutes

discrimination against them based on national origin (Count 1), a violation of State's

regulations on the matter (Count 3), and a denial of their Fifth Amendment right to due process

(Count 4).

13.     The second class is comprised of U.S. citizens about whom State has maintained records about their First Amendment-protected activities outside the scope of an authorized law enforcement activity, which constitutes a violation of the Privacy Act (Count 6).

14.     The third class is comprised of U.S. citizens whose security records have been or are allowed to be accessed by FSNIs, which constitutes a violation of State's regulations on the matter (Count 7).

15.     The exact number of members of the classes, as hereinabove identified and described, is not known, but it is reasonable to believe the classes are so numerous that joinder of individual members is impractical.

16.     The relief sought is common to the entire classes, and there are common questions of law and fact that relate to and affect the rights of each member of the classes. These common questions include and involve whether U.S. citizens may be processed for security certifications and/or denied employment for failure to obtain one, as well as whether FSNIs are allowed to access the security files of U.S. citizens.  Certain defenses raised by Defendants would apply equally to all members of the classes.

17.     The claims of Garcia against Defendants are typical of the claims of the classes in that the claims of all members of the classes depend on a showing of the acts of Defendants as giving rise to rights to the relief sought herein.  There is no conflict as between Garcia and other members of the classes with respect to this action, or with respect to the claims for relief contained herein.

18.     Garcia is a representative party for the classes and are able to and will fairly and adequately protect the interests of the classes.  Garcia's attorney is experienced and capable in

litigating the claims at issue and has successfully represented claimants in other matters of this nature.  He has over a decade's worth of specialized experience handling complex Constitutional, Privacy Act, and APA litigation and will actively conduct and be primarily responsible for the conduct of the action on behalf of the plaintiff classes.

19.     This action is properly maintained as a class action in that the prosecution of separate actions by individual members of the classes would create a risk of adjudications with respect to individual members of the classes which would as a practical matter be dispositive of the interests of others not party to the adjudications, or would substantially impair or impede their ability to protect their interests.

20.     This action is properly maintained as a class action inasmuch as the questions of law and fact common to the members of the classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## LEGAL AND POLICY BACKGROUND

21.     The Foreign Affairs Manual ("FAM") and the associated Foreign Affairs Handbooks constitute "a single, comprehensive, and authoritative source for the Department's organization structures, policies, and procedures that govern the operations of the State Department."  Foreign Affairs Manual, *available at* https://fam.state.gov (last accessed Aug. 2, 2018).

22.     The United States Government hires employees to work in its foreign embassies who reside in the host country.

23.     These positions, regardless of agency, can only be filled by certain categories of persons, among which are persons defined as "Foreign Service Nationals" ("FSN") and

"Ordinarily Resident" ("OR").  The term encompassing both FSNs and ORs is "Locally Employed Staff" ("LES").  3 FAM 7121.

24.     The FAM defines "Foreign Service National," in pertinent part, as "[a] non-U.S. citizen, who is not an [Eligible Family Member] or member of household . . . employed at a U.S. mission."  *Id.*  "An applicant who has U.S. citizenship may not be hired as an FSN employee."  3 FAM 7224.2-3.

25.     The FAM defines "Ordinarily Resident," in pertinent part, as "[a] foreign national or U.S. citizen who: (1) Is locally resident; and (2) Has legal, permanent resident status within the host country."  3 FAM 7121.  ORs may be hired in positions available to FSNs.  *See* 3 FAM 7224.2-3.

26.     An FSN may only be employed at an embassy after "[a]t least a temporary security certification, good for 120 days, has been issued by the post security officer."  3 FAM 7222.1-1.

27.     The policy governing security certifications (not to be confused with security clearances) for FSNs is established in 3 FAM 7222.

28.     Each subsection of 3 FAM 7222 "[a]pplies to Foreign Service Nationals Only." *Id.*

29.     No statute, regulation, or policy authorizes an RSO to process an OR applicant for a security certification.

30.     No statute, regulation, or policy authorizes an agency to rescind a conditional offer of employment ("COE") to an OR for failure to obtain a security certification.

31.     A security clearance (not to be confused with a security *certification*) is an adjudication made by a government agency that an individual is eligible to access classified information.  The governing document regarding security clearances is Executive Order 12,968.

32.     When an applicant is issued a COE for a position at an embassy which requires a security clearance, the relevant RSO forwards the request to State's Bureau of Diplomatic Security ("DS"), "which is responsible for the investigation, issuance, denial, revocation, or reduction of security clearances."  3 FAM 123.5-1(C).

33.     An RSO is often tasked by DS with carrying out local investigative tasks during a security clearance investigation, but has no authority to make decisions regarding the issuance or denial of a security clearance.  An RSO is not allowed by State policy to process a person for a security certification who has received a COE for a position which requires a security clearance.

34.     A Foreign Service National Investigator ("FSNI") is a FSN who has been hired to work in an RSO to "perform a variety of tasks that support the entire security program abroad." 12 FAM 423.7(a).

35.     One of the tasks assigned to FSNIs is "conducting investigations as assigned by the RSO to include background/security investigations."  12 FAM 423.7(a)(4).

36.     "FSNIs are prohibited from access to the security files of U.S. citizens."  12 FAM 423.7(b).

37.     The Privacy Act prohibits an agency from maintaining any "record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless

7

pertinent to and within the scope of an authorized law enforcement activity."  5 U.S.C. §
552a(e)(7).

38.     When an agency besides State seeks to hire an LES to work in an embassy, the
official policy is as follows.

39.     First, the embassy Human Resources Office ("HR") posts the position
announcement, screens applicants for minimum eligibility, and sends the applications which
pass the initial screening to the agency's hiring official.

40.     The agency's hiring official then reviews the applications and conducts any
interviews.

41.     The agency's hiring official then makes a hiring decision, which is transmitted to
HR.

42.     HR then issues a COE to the selectee and states that it is contingent upon
successful receipt of a security certification or security clearance (whichever is appropriate) and
a medical clearance.

43.     HR then refers the matter to the RSO (to be adjudicated for a security
certification) or DS (to be adjudicated for a security clearance), whichever is appropriate.

## FACTUAL BACKGROUND

44.     Garcia is an immigration attorney who holds a degree in both U.S. and Mexican
law.  He lives and works in Mexico City, where he regularly engages with the staff at the U.S.
Embassy in Mexico City ("the Embassy") on behalf of clients seeking to immigrate to the United
States.

45.     On 28 January 2010, HR advertised two Legal Assistant Resident Legal Advisor
positions, neither of which required a security clearance.

46.     These positions were located in the DOJ Office of Overseas Prosecutorial Development, Training, and Assistance ("OPDAT"), which is part of the Criminal Division.

47.     On 4 February 2010, Garcia applied for the OPDAT positions.

48.     In March 2010, Garcia was interviewed by Kevin Sundwall, the OPDAT hiring official, and Sundwall informed him that he was the most qualified applicant.

49.     On 14 April 2010, HR extended a COE to Garcia for one of the OPDAT positions.

50.     The COE stated that employment would be "contingent upon a [certification] granted by the [RSO]."  The COE mistakenly used the word "clearance" instead of "certification."

51.     On or before 19 April 2010, the RSO made a determination to advise HR and/or OPDAT "not to consider [Garcia] for a position with the USG here in Mexico City."

52.     The RSO made this determination without conducting a background investigation because it had previously collected information about Garcia from previous interactions with him and had decided in advance that "he was not going to be considered for a position, based on his prior behavior."  The RSO decided not to proceed with a background investigation but "to deny him a certification of employment."

53.     On 19 April 2010, Sundwall exchanged emails with an HR employee and an RSO employee seeking to determine "how to go about 'un-hiring'" Garcia because Sundwall had changed his mind after being informed of the RSO's allegations.  Sundwall ultimately "decided not to pursue hiring Mr. Garcia due to derogatory information about Mr. Garcia."

54.     On 22 April 2010, the RSO sent a memo to HR stating that it had denied Garcia a security certification "due to derogatory information found during the investigation."

55.     On 22 April 2010, HR advised Garcia that his COE had been rescinded because the RSO, "upon completion of [his] background investigation, ha[d] denied [him] a security [certification]."  The letter mistakenly used the word "clearance" instead of "certification."

56.      On 22 April 2010, Garcia attempted to contact HR and the RSO to determine the reasons for the certification denial.  Neither office would discuss the matter with him, and a State attorney later informed Garcia's counsel that a security certification was "a discretionary decision made by the Regional Security Officer after reviewing the results of the background investigation . . . with no procedures for appeal."

57.     On 12 May 2010, HR readvertised the OPDAT position.

58.     On 26 May 2010, Garcia reapplied for the OPDAT position.

59.     On 30 June 2010, HR informed Garcia that he was not selected for the OPDAT position.

60.     On 18 October 2010, HR advertised an Investigator position for U.S. Immigration and Customs Enforcement ("ICE"), which did not require a security clearance.

61.     On 1 November 2010, Garcia applied for the ICE position.

62.     As of this writing, HR has not contacted Garcia about the ICE position.

63.     On 31 January 2011, HR advertised a Political/Legal Specialist position for U.S. Customs and Border Protection ("CBP").

64.     On 14 February 2011, Garcia applied for the CBP position.

65.     As of this writing, HR has not contacted Garcia about the CBP position.

66.     On 20 September 2012, Garcia received from State the first tranche of records responsive to a Freedom of Information Act/Privacy Act request filed in 2010 for records about himself.

67.     The released records revealed that the RSO had collected and maintained a significant amount of information about Garcia's First Amendment-protected activities, such as his involvement in protests against U.S. immigration policy, his participation in community groups, his publication of a book about the visa process, and his seminars about the visa process, and that it had denied him a security certification based on these activities.

68.     On 17 October 2012, based on the information contained in the released records, Garcia requested and participated in Equal Employment Opportunity ("EEO") counseling from State.  After counseling failed to resolve the matter, Garcia filed a formal EEO complaint with State on 18 January 2013, which was assigned Case No. DOS-F-058-13.

69.     On 22 October 2012, HR readvertised the OPDAT position.

70.     On 29 October 2012, Garcia reapplied for the OPDAT position.

71.     On 4 January 2013, HR advised Garcia that he was not selected for the OPDAT position.

72.     On 15 January 2013, HR readvertised the OPDAT position.

73.     On 24 January 2013, Garcia reapplied for the OPDAT position.

74.     On 1 February 2013, HR advised Garcia that he was not selected for the OPDAT position.

75.     On 11 June 2013, HR advertised a Paralegal position for the DOJ Office of International Affairs ("OIA")—also part of the Criminal Division—which required a security clearance.

76.     On 1 August 2013, three RSO employees met with four representatives from the Mexico City Migrant Assistant Office.  At one point in the meeting, the Mexican officials stated that they regularly worked with Garcia on a *pro bono* basis to assist Mexican immigrants in need

of legal counsel related to U.S.-Mexico immigration issues, and the RSO officials (specifically Alexandru Mihai Ghitescu Musat, supported by the others) then told the Mexican officials the following things: (a) Garcia is a Coyote (smuggler); (b) he defrauds visa applicants; (c) he helps visa applicants "produce documentation"; (d) he is "the worst attorney there is"; and (e) he "charges astronomical fees for non-existent immigration applications/procedures."

77.     On 29 August 2013, an RSO employee informed another RSO employee that Garcia would be denied a security certification if he ever applied again, stating, "It's up to HR if they want to waste the applicant's time and their time own time in processing him through and knowing that we'll deny the security certification."  The RSO employee then stated that he would "explain this" to HR.

78.     Between 11 June 2013 and 14 March 2014, HR and the RSO advised OIA about Garcia's previous failure to obtain a security certification and stated that "he could not pass or should not be passed through the background check."

79.     The RSO told OIA that the process for investigating an applicant for a security clearance was, "The Regional Security Office would do their own investigation of any applicants and decide as an initial matter whether that applicant could be passed on to the main Diplomatic Security Service office in Washington, DC to continue and do a more thorough or the final background investigation."

80.     The RSO also told OIA that Garcia "was either providing information that the RSO's Office believed was inaccurate or providing advice to people on ways to circumvent the legal mechanisms or legal processes by which people could either get permission to travel to the United States or maybe even physically get to the United States," adding that "[t]he term of art was 'coyote.'"

81.     On 14 March 2014, Garcia was interviewed by Robert Ciaffa, the OIA hiring official.  During the interview, the interviewers asked him about his prior EEO activity and his problems with the RSO.

82.     On 10 April 2014, HR advised Garcia that he was not selected for the OIA position.

83.     On 3 May 2014, Garcia requested and participated in EEO counseling from State. After counseling failed to resolve the matter, Garcia filed a formal EEO complaint with DOJ (at State's insistence) on 20 August 2014, which was assigned Case No. OBD-2014-00964.

84.     On 6 May 2014, HR readvertised the OIA position.

85.     On 20 May 2014, Garcia reapplied for the OIA position.

86.     On 1 July 2014, HR advised Garcia that he was not selected for the OIA position.

87.     On 23 December 2014, HR readvertised the OPDAT position.

88.     On 8 January 2015, Garcia reapplied for the OPDAT position.

89.     On 4 March 2015, HR advised Garcia that he was not selected for the OPDAT position.

90.     In the course of these proceedings, State confirmed that the Mexico City Embassy stores all the security files of ORs, including U.S. citizens, in the FSNI office, and that FSNIs have unrestricted access to them.

91.     Upon information and belief, this is typical of all U.S. embassies.

## FIRST CAUSE OF ACTION

## (TITLE VII – NATIONAL ORIGIN DISCRIMINATION)

92.     Garcia repeats and realleges the allegations contained in all paragraphs set forth above.

93.     State has a policy of processing all ORs for security certifications, regardless of citizenship, despite the fact that that process may only be used for non-U.S. citizens.

94.     Treating U.S. citizens as non-U.S. citizens constitutes prohibited national origin discrimination in violation of Title VII.

95.     State's act of processing Garcia for a security certification (and subsequent denial of same) was the direct cause of every adverse action described above.

## SECOND CAUSE OF ACTION

## (TITLE VII – REPRISAL FOR PROTECTED ACTIVITY)

96.     Garcia repeats and realleges the allegations contained in all paragraphs set forth above.

97.     Upon information and belief, State and DOJ took many if not all of the adverse actions since 2012 described above partially in retaliation for Garcia's protected activity.

## THIRD CAUSE OF ACTION

## (APA – FAILURE TO FOLLOW REGULATIONS (3 FAM 7222))

98.     Garcia repeats and realleges the allegations contained in all paragraphs set forth above.

99.     The processing of a U.S. citizen for a security certification is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

100.    Garcia is therefore entitled to relief in the form of a declaratory order that State is in violation of its regulations and an injunction compelling State pursuant to the APA to follow its self-imposed mandate of 3 FAM 7222.

## FOURTH CAUSE OF ACTION

## (FIFTH AMENDMENT – DEPRIVAL OF LIBERTY INTEREST WITHOUT DUE PROCESS)

101.    Garcia repeats and realleges the allegations contained in all paragraphs set forth above.

102.    State is not permitted to violate Garcia's Constitutional rights, as set forth by the Constitution of the United States.

103.    As no appropriate and effective opportunity was ever provided to Garcia for an opportunity to refute the allegations made against him or clear his name, he is entitled to a name-clearing hearing and a written decision arising therefrom.

104.    As a result, Garcia has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities.

## FIFTH CAUSE OF ACTION

## (FIRST AMENDMENT – USE OF PROHIBITED INFORMATION)

105.    Garcia repeats and realleges the allegations contained in all paragraphs set forth above.

106.    State is not permitted to violate Garcia's Constitutional rights, as set forth by the Constitution of the United States.

107.    When State denied Garcia a security certification based on his First-Amendment protected activities, it violated his rights under the Constitution.

108.    As a result, Garcia has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities.

## SIXTH CAUSE OF ACTION

## (PRIVACY ACT – MAINTENANCE OF PROHIBITED INFORMATION)

109.    Garcia repeats and realleges the allegations contained in all paragraphs set forth above.

110.    The maintenance of information about individuals' First Amendment-protected activities is generally prohibited by the Privacy Act.

111.    Processing a U.S. citizen for a security certification is not authorized under law.

112.    Therefore, the maintenance of information about U.S. citizens' First Amendment-protected activities in records about the processing of them for security certifications is prohibited by the Privacy Act.

## SEVENTH CAUSE OF ACTION

## (APA – FAILURE TO FOLLOW REGULATIONS (12 FAM 423.7))

113.    Garcia repeats and realleges the allegations contained in all paragraphs set forth above.

114.    Allowing FSNIs to access the security files of U.S. citizens is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

115.    Garcia is therefore entitled to relief in the form of a declaratory order that State is in violation of its regulations and an injunction compelling State pursuant to the APA to follow its self-imposed mandate of 12 FAM 423.7.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gustavo Garcia, and where appropriate all other similarly situated individuals, prays that this Court:

(1)    Order State to cease processing U.S. citizens for security certifications;

(2)    Order State to inform appropriate class members of the cessation of this practice;

(3)    Order State to expunge all records about him currently maintained by the RSO;

16

(4)     Order State to expunge all information about the First Amendment-protected activities of U.S. citizens who were processed for security certifications since 2010.

(5)     Order DOJ to have a neutral hiring official who possesses no knowledge of his previous interactions with the Embassy assess his eligibility for the OPDAT and OIA positions, and if he is selected for either position, issue him a COE and proceed with the appropriate security investigation;

(6)     Order State and DOJ to pay Garcia compensatory damages of up to $300,000;

(7)     Order State and DOJ to pay Garcia reasonable attorneys' fees and the costs of this litigation, including fees and costs incurred in the EEO administrative process;

(8)     Order State and DOJ to pay Garcia such front pay and future benefits as may be appropriate;

(9)     Order State and DOJ to pay Garcia appropriate prejudgment interest;

(10)    Order State to cease the practice of allowing FSNIs to access the security files of U.S. citizens.

(11)    Order preliminary and permanent injunctive and/or declaratory relief as may be appropriate; and

(12)    Grant such other relief as the Court may deem just and proper.

Date:   August 2, 2018

Respectfully submitted,


/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853

301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*